Let's see, Ms. Williams, I believe you're up first. May it please the court, my name is Susan Williams. I'm counsel to the Hualapai Tribal Official Defendants and Appellants here, Chairman Charles Vaughn and the Tribal Tax Director and Accountant Wanda Easter. Your Honors, if I may summarize from the tribe's perspective what is at issue in this case, this is an appeal about basic respect for tribal courts and tribal governments. That is the foundation for federal Indian law and policy, a fundamental respect for the first governments that existed in this great land. Your Honors, the court below incorrectly denied the tribe's motion to dismiss on the basis of sovereign immunity from suit because the tribal officials were not taking any action to collect the tax challenged in this case. The court was aware, was it not, that there had been a history apparently of disputes between the tribe and the railroad that had resulted in a settlement for back taxes and then the tribe took what appeared to be steps to begin assessing further taxes when they sent the forms out. Isn't that enough to establish a case or controversy within the meaning of our case law? Your Honors, if I may, I was there at the time. I'm sure you were. This was an actual shock and awe surprise to the tribe. We thought in fruitful discussions with the railroad about an appropriate fee based on the railroad's clear impacts on the Hualapai tribe has far greater impacts than the case in the Fort Peck case that this court has said. You've got to have full discovery before you decide whether or not there should be exhaustion, for example, of tribal court remedies or whether there's inherent sovereignty under any of the Montana exceptions to impose the tax. We told the railroad, and it was very clear, despite the ministerial sending out the usual forms by the tribe's director of the tax program, who was not involved in the negotiations, the tribe, Your Honors, told the railroad consistently we are not intending to enforce this tax and we were in discussions with the railroad over several years. Isn't it the same tax under the same ordinance? It is the same tax, but we had told them we were not going to enforce it and we were in discussions over an appropriate tax tailored to the impacts of the railroad. I guess your argument would be much stronger if the only thing in the record was the sending out of the registration forms, but my question to you is, why couldn't the district court look at the long history of litigation, the dispute between the tribe and the railroad that had resulted in a settlement as to prior tax years and just view this as the next step in the continuing dispute so that for Article III purposes, there clearly is a controversy that exists between the tribe and the railroad over whether or not some compensation is owed for the railroad's use of the railroad. But that is not the tax that is at issue here. The tribe made it very clear, Your Honors, they were not enforcing this tax. The reason we were in negotiations is to see whether we could come to another agreement. I don't follow your argument. If it's the same ordinance and you previously settled prior tax years liability and you're paying more money, why isn't this just the next step in a long controversy for Article III purposes? Your Honors, the prior agreement had expired and that's what we were trying to do is come up with a new agreement. And in the course of those negotiations, all of a sudden, we're sued in federal court. And what the tribe just doesn't understand is that it's absolutely indisputable that there is a good, colorable claim under Ford Motor Company v. Totticini, there's a colorable claim that this case should never have been heard in the federal court. The tribes were not taking any action to enforce this tax. We were in negotiations. Interestingly, Your Honors, we were in negotiations and we thought they were fruitful. We really thought we were getting somewhere, Your Honors. Apparently, the railroad did not.  And here's what happened, as a matter of fact. The railroad had committed a trespass on tribal lands in a separate proceeding in the tribal court. I made the suggestion to the railroad, why don't we settle both cases? And the answer was... Does the trespass have to do with what, their maintenance crews accessing the... Yeah, they're supposed to get a permit from the tribe... Every time they come on to the reservation... Right, right. And so there was some discretion on the tribe's part to impose damages. So I simply asked the railroad, why don't we work both of these out, get a comprehensive settlement here, and within a matter of weeks, we were sued in federal court. That is why we claim that the tribal officials were not taking any actions that will render them subject to the indignity of a suit by private officials in this court, when the tribe itself was working diligently to derive a tax that fits under the Montana Second Exception. We are not enforcing this tax. That's, Your Honors, why I filed a motion to dismiss instead of having discovery. My point was, we're not doing anything, and the railroad knew darn well that we were not enforcing that tax. Now, the railroad's litigation here, in our view, is frivolous. This was a lawsuit that was filed at a time when the tribes nationwide were experiencing railroad's efforts to pay Indian tribal governments less than the railroad pays to state and local governments in comparable circumstances. This is something that's going on nationwide. It's a nationwide campaign, and now we have had the Hualapai tribe brought into court. It is a non-rural, non-gaming tribe. It has scarce resources. Those resources should have been devoted to continuing dialogue with the railroad instead of filing this what we believe to be frivolous lawsuit in the federal courts. Now, Your Honors, the tribe still intends to work with the railroad. We have not stopped in our efforts to try to deal with the governmental functions that we have to pay for to monitor and address the railroad's impacts on the reservation. The railroad's impacts here are far greater than this court thought was relevant in the Fort Peck case. Twenty-six trains a day at Fort Peck. Eighty trains a day through the heart of the governmental center of the Hualapai tribal reservation. We have documented accidents. In fact, there is a tribal court case going on now over a railroad accident causing several very, very tragic deaths on the reservation. There's blockage of access routes. If you ever go to the Hualapai Nation, you can see there's constant interruption of cultural events. The trains go blazing through. There are very substantial impacts on this tribe, and so under the principles of Montana and under the principles of Marion versus Hickory Apache tribe, in which case the decision this court pointed out the importance, and we're not saying that this tax is valid, your honors. We are saying that what the tribe is doing here has a legitimate basis in sound jurisdictional or jurisprudential principles. As the court in Marion said, we are not persuaded by the dissent's attempt to limit an Indian tribe's authority to tax non-Indians by asserting that the only source is the tribe's power to exclude such persons from tribal lands. Limiting the tribe's authority to tax in this manner contradicts the conception that Indian tribes are domestic-dependent nations as well as the common understanding that the sovereign taxing power is a tool for raising necessary revenues to cover the cost of government. That's all the tribe was trying to do here. They were not trying to exceed federal law, and in fact, they had told the railroad, let's work on something that is appropriate under federal law. That is why the tribe filed a motion to dismiss, and this is why the tribe requests this court to remand this case back to the district court with instructions to either dismiss or stay at hand pending the exhaustion of tribal remedies. We believe by requiring this railroad to exhaust its tribal remedies, there will be an opportunity to eliminate the burdens on this federal court that have been imposed by railroad litigation. Am I correct that you did not raise the exhaustion of tribal remedies issue until your reply brief in this court? No, that was the basis of our motion to dismiss. Before the district court? Correct. Okay, but did you brief it in your opening brief to this court? Motion to dismiss, memorandum in support, yes. Filed in this court? In this court, yes. Yes, that was the basis of our appeal. No, we're not communicating. Let's start all over again. Did you raise in your opening brief in this court the issue of the fact that we do not have jurisdiction because the railroad did not exhaust its remedies? It's in tribal court? Yes, Your Honor. In your opening brief? Yes, Your Honor. Okay. All right, where in your opening brief would I find that argument? Let me pull that for you. I stand corrected. We put it in the reply brief. I apologize. So how do you get around our rule that says that if a party doesn't distinctly raise it in the opening brief, it's waived? What we believe is that the exhaustion is not sort of the crux of this appeal. It's only a suggestion that this is a remedy for the problem here. It's the basis of your jurisdictional argument, isn't it? Our jurisdictional argument is that the doctrine of ex parte young does not apply and the tribal officials cannot be sued. Is there a distinction between suing the chairman of the tribe versus the revenue collection agent of the tribe? No, it's a fiction as we know. Neither one of them were involved in the negotiator, only the chairman was involved in negotiations but not any tax collection. Okay, but the revenue collector, I forget what her title is. I mean, she's the one who sent the forms out, right? And I assume she's the one who would also send the tax bill? That's not how the tax works. We basically tell them to report and pay what they think is based on their value. The tax is based on the same approach that the local county taxes the railroad. We use the same valuation basis. And so, it's a ministerial function just to send out routinely these tax forms. We never sent out any effort to collect, actually collect the tax. Doesn't the railroad allege in its complaint that Ms. Easter is the tribal official who's responsible for collecting the tax? She is. She is. That's part of her function. She's the tribal accountant. She wears tribal hats. All right, so why then shouldn't we look at that line of authority that talks about the ability to grant prospective relief, injunctive relief, as to the person who's actually taking action to enforce the tax? Your Honor, this is our distinction in our mind. You get prospective relief only if there is a real threat of harm. There was not that here. The railroad was told repeatedly. We are not enforcing this tax. So, we are. But if we disagree with you on that argument, that you really are seeking to enforce the tax against the railroad, then would you agree that injunctive relief against the tax collection agent would be appropriate? Yes, I do, Your Honor. Okay. What about the other party that was named? Chairman Vaughn? Oh, he was involved on the, see, the tax director was carrying out her functions under the ordinance without any notice or any regard from the tribal council that we were trying to work a deal out with the railroad. There's a separate function. She's merely an employee. Chairman Vaughn, however, was actively involved, as was the previous chairwoman, Louise Benson, in working with the railroad to try to come up with an appropriate fee for the actual impact that they imposed on the reservation. Ms. Williams, would you like to reserve your time? Yes, I'd like to reserve if I may five minutes. I just wanted to... No, if you have any other points that you'd like to make now, go ahead. I just thought I'd offer you that option. Let me just say this, Your Honor, and I will sit down for a moment. I've been working on this case from the very beginning, and I've been working on tax cases. I was Kerr-McGee versus Navajo tribe. I've been working on tax cases and jurisdiction cases for years. We were trying to negotiate with the railroad an appropriate tax in light of Montana, Fort Peck, and all those decisions. But what I experienced here is that somehow the railroad feels like it's entitled to a dollar for dollar payment for each of its taxes. That's not true anywhere in the country. You don't pay a tax and expect the United States to give you equal amounts and services, and I think that's the crux of what's going on here. The railroad was unhappy with the tribe insisting that it be paid fairly and in a way comparable to other local governments. And when they insisted that in the negotiations, I think that's what led to this lawsuit. So basically what you're really asking to ameliorate the impact of the AD trains in the reservation. We have to have services. I mean, for example, the one railroad accident that we're dealing with also before this court in a separate matter. You know, the tribes are always the first responders. This is out in the middle of nowhere. The county can't get there. The state doesn't bother. And so it's always the county emergency vehicles, the county police taking, you know, dealing with this accident and, you know, these accidents spill over on tribal land. So, you know, the whole area is, you know, affected. So yeah, we definitely need to pay, have the railroad pay its fair share of the cost of governmental services, just like any other person in this country. Okay. I think we understand your position. Let's hear from Mr. Cole and hear what BNSF has to say. I am Charles Cole of Stephill & Johnson representing the Burlington Northern and Santa Fe Railroad. The first question we have is whether there is an appeal appropriately before this court today. This is a denial of a motion to dismiss, the classic form of a non-final order. That's the only order that we have in front of the court. There's no issue of tribal immunity, the tribe's not a party. There's no issue of official immunity. Everyone agrees that under this decision in Bighorn, suits for prospective relief against tribal officials are not barred. And that's what we have here. We also have a holding of this court that say issues of rightness or imminence as the tribe is attempting to import here are not part of ex parte young analysis. That's the National Audubon Society case, 307 F3rd at 847. So we really can't reach that issue either, this whole question of whether there's enough action going on below to make for a fully right case. And there's good reason for that. If that were reviewable on a motion to dismiss, we would see state and local officials saying you've mistaken my intent about whether I'm enforcing this statute and I want an interlocutory appeal. Let's stop this case while I take this up on the theory that it's connected to immunity. It isn't really connected to immunity and it doesn't have the reason for an interlocutory appeal that real immunity issues do. Immunity issues, the Supreme Court said in the Mitchell case, come up to the extent that they are based on, they turn on issues of law. This is something that, as we're going to see in a second, turns really on facts. What, who's trying to enforce what, who said what to whom. This is the kind of factual issue that belongs in the district court and does not belong here on a motion to dismiss. There is no record in this case. There's nothing about who promised what to whom other than what's in the complaint which says there is a history of controversy between these parties and there were attempts to enforce this statute. So this isn't the appropriate time to take up this kind of issue and indeed the courts don't do so. The Supreme Court clarified in a case called Johnson versus Jones that immunity issues that involved evidence are not appropriate for interlocutory review. So this case doesn't belong here in the first place, but because Ms. Williams has, you know, strongly argued, well, we're not trying to enforce this tax, let me say a few words about that. First of all, there's no requirement of imminent enforcement. The summit medical case from the 11th circuit discusses this at length in the context of ex parte young and said it wouldn't work to require imminent enforcement. And we've got plenty of evidence here that there is, the history that Judge Truman has referred to. We've got the initial efforts here to enforce. We have things that are not yet in the record if they needed to be like a letter that says you're out of compliance with this tax, you have accumulating penalties and interest going day to day as you fail to pay this tax. Now, we never had a chance to put any evidence on this end because this was raised in the reply brief for the first time in the district court. So we never had an evidentiary time to put in that, yes, there were efforts being made and threats being made against the railroad saying that we needed to enforce the tax. In fact, all we have this morning is Ms. Williams saying we told them, we told them, there's nothing in writing, there's no evidence at all that, of these promises that there was no tax. The tax is on the books and if you look at page 51 of the excerpts of record, you will see that it has a lien for unpaid taxes and it has interest or a penalty it really calls it, a 1% per month of the amount of the tax for failure to file the tax. In theory, if the tax is still on the books and it's a good tax, that's accumulating against the railroad. It faces then a real ongoing injury that is a concern and that's enough of a basis for this case. Now, the other issue that the tribe has tried to inject here is this exhaustion issue. Well, how does that come before this court? That's not connected in any way to immunity. That's a separate issue and this court has steadfastly taken the position that it is not going to hear other issues on a pending jurisdiction unless they are inextricably intertwined which means that one has to be necessary to the decision of the other. That's not the case here. There are two separate doctrines, each arises without the other, each can arise in a case without the other. One has to do immunity with the shape of the relief requested and the persons against who the case can be brought. The other one deals with the forum in which certain issues are supposed to be brought and there's no one can be decided without the other. Yeah. Why shouldn't we look by analogy to our cases accepting interlocutory appeals on questions of qualified immunity in section 1983 actions in deciding, I believe it would be a case of first impression in this circuit that where a tribe invokes sovereign immunity that's similar enough to a state official invoking qualified immunity under 1983 to carve out an exception under Cohen versus beneficial finance to the rule against the piecemeal. Because we don't have here a classic issue of qualified or of immunity. We have really the question of are there adequate efforts to enforce and this court's already looked at that in terms of ex parte young immunity and say that eminence rightness question is not part of the immunity analysis at all. We've already, this court's already passed that point. Let me flesh it out a little more. We normally say in qualified immunity cases that the reason we permit an interlocutory appeal is because the immunity to the extent that it is properly invoked is a complete protection against being drug into the litigation. And that that should be decided at the earliest possible stage of the case if it is properly claimed. And if the tribe does enjoy sovereign immunity here, why isn't the effect the same? If they do have sovereign immunity, then we shouldn't be hailing them into federal court. The tribe is not a defendant in this case. Then let's look at the tribal chairman. You've named him as well as the tax collector. This court has already held that prospective relief may be sought against tribal officials. And that's all that we do. Assuming that the tribal, that the relief would be effective in order to grant you the relief that you need. Why isn't it sufficient to simply allow you to proceed only against the tribal official who is the revenue collector as opposed to the tribal chairman? Well, the complaint alleges that he possesses executive authority. That's uncontradicted. And that seems to be an adequate basis here. And I think what Ms. Williams is saying, he is the person that's controlling the situation. But wouldn't that be analogous to naming the governor when in a tax dispute involving the director of the franchise tax board, our last case for example? If this issue had been raised in the district court, we could have gotten details on who controls what of the taxing process. But it wasn't. At this point, the question is, is there a viable basis for going forward here? And there is, based on the record that we have. And what I was raising is, how do we get to this exhaustion issue that Your Honor mentioned, which is a different issue entirely from these, it's already been held that exhaustion issues. The exhaustion issue, as I understand the argument, even though I have a concern with regard to whether or not it's properly before us based on the procedural posture, is that you first have to exhaust your remedies in tribal court. Let's assume that you win on that issue, at least for purposes of this appeal, and that we accept your argument that that argument, that issue is not properly before us. We still have the problem, as I understand it, that there is, as you allege, an ongoing effort, a dispute, with the tribe over the collection of a tax. And you want, apparently, some sort of injunctive relief against the officials of the tribe who are seeking to collect the tax from the railroad. Correct. Okay. Correct. Well, and that, would you assume the point I was going to address, and maybe I should move on, which was, there really isn't a basis in penitentiary restriction to encompass exhaustion. And I should say, it doesn't stand alone. That's already been addressed, not in the context of tribal exhaustion, but exhaustion by Judge Easterbrook in a case called Davis versus Streiksta, which is cited in our brief. It's a 227 F-3rd 759, and he says exhaustion doesn't come up as a separate issue. It's not a collateral issue. It can be reviewed at the end of the case. So, you know, I don't know whether I should address exhaustion on the merits of the exhaustion issue if it's not here at the moment. Well, I'll let you decide how you're going to use your remaining 10 minutes, but from my perspective alone, I don't think you need to address exhaustion any further. My brethren may have further questions on it, but you might want to move on to something else. Well, let me mention a couple of other points. Let me finally just reflect for a moment, because we did hear a lot. I don't think the merits you hear either about taxes and what the tribe's power is and what the effect on the tribe is. The tribe, this is a small town that has a railroad going through it. Happens to a lot of small towns across America. The question is, what's their authority to tax a railroad which is on its own land? This is clearly land owned by the railroad. That's a point undisputed on this record and the complaints that's been affirmed in prior federal cases, and the Supreme Court's already addressed this whole issue in the Atchison case and said that, first of all, reiterated the Montana presumption that there's no tribal authority of a non-member on his or her own land, and then it said the only exception in the Pax case, and it said this in footnote 12 of the unanimous Atchison opinion, the exception is, well, if you can show a severe enough drain on the resources of the tribe from the conduct of a non-member, that it imperils the existence of the tribe. Our complaint says that's not true, and the tribe is not. Yeah. Pardon me. Isn't this goes to the merits? It does, and I don't think this is in front of the court. I agree. Hold the denial of the motion to dismiss. This is what you would then be asserting in a district court. Isn't that right? That's correct. Do we have to be bothered with that here? No. Okay. Then I agree. It's nice to hear from you because you make a nice argument. I agree. I don't think we need it. I just wanted to make sure it was covered. Now, and I have to say, finally, that the accounts we've heard from Ms. Williams are not my impression of the whole negotiation process. I'm reluctant to go into that with this court, but our feeling is the negotiations broke down. The parties were too far apart. The tribe did not have a proposal that we could live with. I guess we didn't have one that they could live with, and that's why we're in litigation today. Let me just ask a question. I think you just answered it, but is this a case that might benefit from having the parties talk to our Ninth Circuit mediators to see if maybe we could help mediate a resolution? After it came up on appeal, we did try the mediation process. We spent a considerable amount of time, and again, without going into the details of that, that broke down as well, and that is why we are here today. So I think there is a great difference between the parties. So I think that covers the issues, unless someone has any questions. Thank you. All right. Ms. Williams? Thank you, Your Honor. I have four points here. Number one, I need to correct my earlier statement that I didn't raise in my opening brief. You did raise the exhaustion issue, didn't you, in your opening brief? I will repeat it on page 16 of my opening brief. Yeah, page 4, page 10, and then I think on 16. Page 16, yes, I did. So thank you for the pop quiz here. Secondly, I want to say this. I'm not sure what the relevance of the Bighorn case is. I mean, in that case, there was actual efforts to enforce the tax, collect the tax, and move forward. That's not the case here, fully distinguishable. Same with Atkinson. I mean, my goodness, Atkinson involved a tax program that I helped write, as a matter of fact, and it involved a trading post on the very edge of the reservation, way, way far away from the tribal government center. In contrast, in this case, the railroad runs 80 miles through the heart of the reservation, right through the tribal government and population center. It's like any other local town. That's true. All other local towns and counties, of course, get to assess fair taxes in contrast to the efforts of the railroad here. Mediation, I wish we could talk about it, but we can't. I can simply say- You tried and- We tried, and the tribal council was not happy with the results. I thank your honors for this time. Thank you for your argument, counsel. The case that's argued is submitted, and we'll take a 15-minute recess before we hear argument in the last case on the calendar this morning. All right.
judges: Alarcon, Thompson, Tallman